J-S39005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CHARLES THEISEN, | |
| Appellant | No. 703 WDA 2016 |

Appeal from the Judgment of Sentence Entered January 12, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):
CP-02-CR-0012533-2014
CP-02-CR-0013588-2014
CP-02-CR-0014997-2014

BEFORE:  BENDER, P.J.E., BOWES, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:               **FILED AUGUST 4, 2017**

Appellant, Charles Theisen, appeals from the judgment of sentence of an aggregate term of 20½-41 years' incarceration, imposed following his conviction for two counts of robbery, and several individual counts of aggravated assault, theft, receiving stolen property, and related offenses. Appellant claims that the trial court erred by denying his suppression motion without a hearing, and without issuing a contemporaneous statement of the court's findings of fact and conclusions of law.  Appellant also contends that the trial court utilized an impermissible sentencing factor by considering the

_____

[*] Retired Senior Judge assigned to the Superior Court.

testimony of the investigating officer, who was not a victim, during the sentencing hearing. After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

> On October 8, 2014, Daniel Eisel was driving his mother's car, a 1994 Buick Century[,] on Hazeldell Street when he decided to stop and get something to eat. Eisel parked the car across the street from 2210 Hazeldell Street and although he had locked the doors, the driver's window and front seat passenger window were left open … approximately one inch. When he returned from eating, that car was no longer there. Later that day, Gloria Wolowski completed her shopping in the Town Square complex located in Brentwood. She went to her car, placed her purse on the driver's seat and then proceeded to place her groceries in the trunk of her car. She then noticed an unknown white male, approximately thirty years of age, wearing a Steeler jersey with facial hair with a thin build, driving an older blue car which pulled up next to her car, striking her vehicle with his mirror. The driver of that car never got out of the vehicle and apparently slid across the seat, opened her door and grabbed her purse. Wolowski observed this and then ran to the other car and got ahold of her purse and was fighting to get it back when the driver started to speed away causing her to violently fall to the pavement. This theft was witnessed by Greg Mondry and Wes Stabler, who ran to Wolowski's aid. Mondry got a good look at the actor and gave basically the same description as Wolowski did to the police. Wolowski was transported to St. Clair Hospital to be treated for a fractured scapula, fractured rib, lacerations, swelling and bruising on her left knee and right wrist. Wolowski was seventy-three years old at the time of this robbery.
>
> On August 9, 2014, Donna Gall had just completed her shopping at the Giant Eagle located at Parkway Center Mall in Green[ Tree], Pennsylvania, and was placing her groceries in her car when she noticed that a vehicle had pulled extremely close to her driver's side door with [h]is driver's side door and attempted to grab her purse from her arm. The driver of the other car never exited his vehicle and Gall struggled with this individual, refusing to

give her purse when he had to speed away, causing Gall to get tangled in her purse and having to run alongside the speeding automobile for approximately ten feet. Gall then fell to the ground and the purse was ripped from her. Green[ Tree] Police were able to obtain a video of the vehicle that was used during the robbery and it revealed that Easel's stolen vehicle, the 1994 Buick Century, was used during the commission of this robbery. Gall described the driver as being in his late twenties, thin build, medium height, and wearing a black shirt and had dark hair and also had facial hair. Gall suffered injuries to both of her knees in addition to several bruises and contusions. She believed that her life was in danger. Gall was sixty-four years old at the time of this robbery. Later on August 9, 2014, Soon Ja Hong was walking along Noblestown Road when she heard the engine of a speeding vehicle approach her. Hong observed an older blue vehicle pull up to her at an extremely close range and grab her purse that was hanging from her arm. The driver of the car grabbed her purse and Hong and the driver proceeded to struggle over this purse, however, he was unable to get the purse from her and then sped away. Hong described the individual who attempted to take her purse as … being a white male of thin build and medium height. She also described the car used in this attempted robbery as an older blue Buick.

After Easel's vehicle had been stolen on August 8, 2014, the police put out a description of that vehicle in an attempt to locate it. On August 20, 2014, Pittsburgh Police received an anonymous phone call saying that a blue Buick Century was parked outside of 338 Sweetbriar Street. The police then went to that address and noticed that the car was parked with all of its windows down. The police set up surveillance to see who would attempt to drive that car and they then saw an individual wearing a Steeler jersey approach the vehicle. That individual got into that vehicle and was attempting to leave when the police pulled in, blocking his exit. The driver of this vehicle was then identified as [Appellant]. When he was questioned by the police [Appellant] said he just received that vehicle from another individual and that he could not have committed these robberies since he was in the hospital and was treated for fractures of both of his heels. When

[Appellant] was arrested he had casts on both legs up to his shins. [Appellant] told the police that he had stolen this car on Paul Street in Mt. Washington on August 17 and wondered what took the police so long to get him. When he was questioned about his injuries, he said that he had fallen off of a roof and went to the hospital on August 1 and then signed himself out on August 10 and went to another hospital on that date and stayed there until being released on August 15. The police got a search warrant for [Appellant]'s medical records and determined that [Appellant] signed off on a release against medical advice on August 6, 2014, when he left Mercy Hospital.

Trial Court Opinion (TCO), 3/27/17, at 6-9.

Appellant was charged in four separate criminal complaints for the above actions, one for each of his victims, all of which resulted in convictions. However, only three of those cases went to trial and are now part of the instant appeal: CP-02-CR-0012533-2014 ("12533-2014"), CP-02-CR-0013588-2014 ("13588-2014"), and CP-02-CR-0014997-2014 ("14997-2014"). In the fourth case, CP-02-CR-0012344-2014, Appellant pled guilty to receiving stolen property and two motor vehicle offenses on April 18, 2016. The trial court notes that the fourth case was not part of the instant appeal. TCO at 3. Moreover, the specific offenses charged in each of the first three cases are not germane to the two issues raised in this appeal.

The relevant procedural history of these cases is as follows. After the Commonwealth charged him in the above matters, Appellant filed a motion to suppress any in-court identification testimony by eyewitnesses, including the victims in this case, on the basis that they were shown a photo array by police which he maintains was unduly suggestive. *See* Motion to Suppress

Identification, 6/19/15, at 3. The trial court denied the motion by order dated June 26, 2015, without having held a suppression hearing. *See* Order, 6/26/15, at 1 (single page). The trial court did not issue any contemporaneous statement summarizing its factual findings or conclusions of law regarding the suppression issue.[1] A hybrid jury/nonjury trial began October 8, 2015, before The Honorable David R. Cashman. Appellant was found guilty of all the offenses before the jury, and Judge Cashman found him guilty of all the charged summary offenses.

On January 12, 2016, the trial court sentenced Appellant at 12533-2014 to 18-36 months' incarceration and 4 years' probation for receiving stolen property; at 13588-2014 to 90-180 months' incarceration and 10 years' probation for robbery, 90-180 months' incarceration and 5 years' probation for aggravated assault, and 18-36 months' incarceration and 5 years' probation for theft; and at 14997-2014 to 30-60 months' incarceration and 5 years' probation for robbery. "All of the periods of incarceration were to run consecutive[ly] to each other and all of the period[s] of probation were to run concurrent[ly] with each other." TCO at 5. Accordingly, Appellant was sentenced to an aggregate term of 20½-41 years' incarceration, to be followed by 10 years' probation. Appellant filed

_____

[1] While not contemporaneous to its decision to deny Appellant's suppression motion, the trial court set forth its factual findings and legal conclusions regarding the suppression issue in its Pa.R.A.P. 1925(a) opinion.

timely post-sentence motions, which were denied following a hearing on April 18, 2016.

Appellant filed a timely notice of appeal on May 12, 2016, and timely filed a court-ordered Pa.R.A.P. 1925(b) statement on August 5, 2016. The trial court issued its Rule 1925(a) opinion on March 27, 2017. Appellant now presents the following questions for our review:

> Whether the [t]rial [c]ourt erred in denying [A]ppellant's motion to suppress evidence without first holding a hearing as required by the rules of criminal procedure?

> Whether the [t]rial [c]ourt erred in allowing a Detective of the Pittsburgh Police Department to testify at sentencing in violation of the statutory rules governing impact statements?

Appellant's Brief at 3.

Appellant's first claim concerns the trial court's decision to rule on his suppression motion without a hearing. Appellant contends that the court's decision was a blatant violation of Pa.R.Crim.P. 581 and, as such, requires this Court to vacate his sentence and remand for a suppression hearing. The Commonwealth argues that no suppression hearing was necessary under the circumstances of this case, and therefore no error occurred.

Pa.R.Crim.P. 581 provides, in pertinent part, as follows:

> (A) The defendant's attorney, or the defendant if unrepresented, may make a motion to the court to suppress any evidence alleged to have been obtained in violation of the defendant's rights.

> …

- 6 -

(D) The motion shall state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof.

(E) A hearing **shall** be scheduled in accordance with Rule 577 (Procedures Following Filing of Motion).  A hearing may be either prior to or at trial, and shall afford the attorney for the Commonwealth a reasonable opportunity for investigation. The judge shall enter such interim order as may be appropriate in the interests of justice and the expeditious disposition of criminal cases.

(F) The hearing, either before or at trial, ordinarily shall be held in open court. The hearing shall be held outside the presence of the jury. In all cases, the court may make such order concerning publicity of the proceedings as it deems appropriate under Rules 110 and 111.

(G) A record shall be made of all evidence adduced at the hearing.

(H) The Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights. The defendant may testify at such hearing, and if the defendant does testify, the defendant does not thereby waive the right to remain silent during trial.

(I) At the conclusion of the hearing, **the judge *shall* enter on the record a statement of findings of fact and conclusions of law** as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought.

Pa.R.Crim.P. 581 (emphasis added).

"Rules of Criminal Procedure do not establish, create, or define crimes, offenses or ordinances authorizing incarceration, fine, or other penalty; hence, Rules of Criminal Procedure are not 'penal provisions' and are not subject to strict construction."  ***Commonwealth v. Wamsher***, 577 A.2d 595, 600 (Pa. Super. 1990).  Instead, we interpret the rules of criminal

procedure under the guidance of Pa.R.Crim.P. 101, which provides as follows:

> (A) These rules are intended to provide for the just determination of every criminal proceeding.
>
> (B) These rules shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay.
>
> (C) To the extent practicable, these rules shall be construed in consonance with the rules of statutory construction.

Pa.R.Crim.P. 101.

Instantly, Appellant argues that the trial court's failure to hold a hearing on his suppression motion was a violation of an "absolute" rule of criminal procedure, Pa.R.Crim.P. 581(E), "without regard for the party that benefits from the decision." Appellant's Brief at 13. Appellant also contends that the trial court violated a similarly strict requirement of the rules by failing to issue a statement of "of findings of fact and conclusions of law." Pa.R.Crim.P. 581(I).

The trial court states:

> In [Appellant]'s motion to suppress the photo array identification, he makes no claim that the police engaged in any type of activity or comment which was designed to influence the ultimate result of his identification. The only claims of suggestiveness are the photographs of themselves. In this regard, [Appellant] has suggested … he stands out because he is the only one wearing a Steeler[s] tee-shirt, he is the only one [who] is not looking directly into the camera, and he is the only one [who] was not in the center of his picture. In light of the claims asserted by [Appellant], there was no need to hold a hearing to elicit testimony as to [the] three claims asserted by [Appellant]. [Appellant]'s motion also contained numerous citations to the case law applicable to claims of suggestiveness

- 8 -

of photo arrays. The only thing that needed to be done was for this [c]ourt to review the photographs to make a determination as to whether or not the photographs were selected in such a manner as to cause [Appellant]'s photograph to stand out against the others.

TCO at 13-14. The Commonwealth agrees with the trial court's justification for not holding a suppression hearing under the facts of this case.

In his brief, Appellant provides no response to the trial court's rationale for not holding a suppression hearing, other than to essentially assert that he is automatically entitled to relief because of the apparent violations of the mandates of Rule 581(E) and (I). Appellant attempts to support his claim by citing **Commonwealth v. Micklos**, 672 A.2d 796 (Pa. Super. 1996), and **Commonwealth v. Long**, 753 A.2d 272 (Pa. Super. 2000). The Commonwealth argues that these cases demonstrate, to the contrary, a case-by-case approach to whether relief should be granted when a Rule 581 violation occurs, and that the circumstances of the instant case are not analogous to the circumstances at issue in **Micklos** and **Long**, where this Court provided relief for Rule 581 violations.

However, we decline to reach these questions after our review of the record in this case. Here, Appellant filed his suppression motion on June 19, 2015, and the trial court issued the order denying the motion on June 26, 2015. Appellant's trial then began on October 8, 2015. At no point between the trial court's order denying the suppression motion, and the commencement of trial, a period of 111 days, did Appellant object to, or

otherwise seek reconsideration of, the trial court's order denying suppression on the basis that the court had failed to adhere to Rule 581(E) and/or (I).

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Here, Appellant did not raise the claim before the trial court until after trial, when he filed post-sentence motions raising the matter on January 22, 2016, 210 days after the order denying suppression was issued. Most importantly, Appellant did not object when it became clear that the trial court had decided the motion without a hearing and without issuing a contemporaneous statement to support that ruling. While Appellant's substantive suppression claim was preserved by the filing of his suppression motion,[2] that motion clearly did not raise or address the procedural claims he makes now with regard to the trial court's failure to conform to the dictates of Rule 581. Even assuming that the trial erred by failing to strictly adhere to Rule 581(E) and (I),[3] Appellant's failure

_____

[2] To be absolutely clear, the issue concerning the underlying merit of Appellant's suppression claim – the ostensibly unduly suggestive nature of the photo array – was not waived by his failure to seek reconsideration or otherwise object to the procedural defects in the court's treatment of his suppression motion. However, Appellant has not presented this Court with any such claims in this appeal.

[3] While we are somewhat troubled by the trial court's failure to hold a hearing without it having been expressly waived by the parties, and although we are even more troubled by the court's failure to issue a contemporaneous statement of findings of fact and conclusions of law with its suppression decision, we expressly decline to determine whether these actions were clearly erroneous in the context and circumstances of this case. Moreover, Appellant has not even attempted to demonstrate or argue how

*(Footnote Continued Next Page)*

to issue a timely objection, or seek reconsideration of the suppression ruling on the basis of the trial court's procedural errors, deprived the trial court of the opportunity to rectify any potential errors with respect to Rule 581(E) and (I) in a timely fashion.

As this Court stated in **Fillmore v. Hill**, 665 A.2d 512 (Pa. Super. 1995):

> [I]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. **Failure to timely object to a basic and fundamental error**, such as an erroneous jury instruction, **will result in waiver of that issue**. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. The principle rationale underlying the waiver rule is that when an error is pointed out to the trial court, the court then has an opportunity to correct the error. By specifically objecting to any obvious error, the trial court can quickly and easily correct the problem and prevent the need for a new trial. Additionally, the appellate court should not be required to waste judicial resources correcting a problem that the trial court could have easily corrected if it had been given the opportunity to avoid the necessity of granting a new trial.

**Hill**, 665 A.2d at 515-16 (citations omitted) (emphasis added).

Accordingly, we conclude that Appellant has waived his first issue by failing to raise it in the trial court in a timely fashion.

_____
*(Footnote Continued)*

he was prejudiced by those decisions if, indeed, such a demonstration is required. What is clear to us, however, is that the trial court was never afforded the opportunity to correct such errors in a timely fashion, while acting under the belief that its actions were permissible under the law.

- 11 -

Next, Appellant claims that the trial court erred when it permitted the Commonwealth to present the testimony of Detective Dawn Mecurio during his sentencing hearing. Appellant asserts that that the detective's testimony was impermissible since she was not a victim in this case. This claim concerns the discretionary aspects of Appellant's sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. **Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Sierra**, **supra** at 912-13.

As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. ***Commonwealth v. Malovich***, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. ***Id.***

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010).

Here, Appellant filed a timely notice of appeal and preserved his claim by objecting at the sentencing hearing, and by raising it in a post-sentence motion. However, he has failed to provide this Court with a Rule 2119(f) statement in his brief, and he has not set forth any argument in his brief that this claim presents a substantial question for our review. When an appellant "has not included a Rule 2119(f) statement and the appellee has not objected, this Court may ignore the omission and determine if there is a substantial question that the sentence imposed was not appropriate…." ***Commonwealth v. Kiesel***, 854 A.2d 530, 533 (Pa. Super. 2004). Instantly, the Commonwealth has not objected to Appellant's failure to include a Rule 2119(f) statement in his brief, and we determine that Appellant's claim presents a substantial question for our review. ***See Commonwealth v. Downing***, 990 A.2d 788, 792 (Pa. Super. 2010) (holding reliance on an improper sentencing factor raises a substantial question permitting review). Accordingly, we now turn to the merits of Appellant's sentencing claim.

At Appellant's sentencing hearing, and following a victim impact statement of Gloria Wolowski, the Commonwealth called Detective Mecurio to testify. Appellant objected, arguing that "she was not a victim in this

case." N.T. Sentencing, 1/12/16, at 8. The substance of Detective

Mecurio's testimony was as follows:

> I've been on with the City for over nine years. I've interviewed a lot of criminals. Most of them, by the time you catch up to them[,] after the fact[, they] show a little bit of remorse. In this case that didn't happen. When we interviewed [Appellant], weeks later, you know, he referred to these women as mother fuckers -- and old mother fuckers, actually. [He s]howed no remorse [for] what he did to these women.
>
> He picked women middle-aged or older. Could have been any one of our mothers, grandmothers, sisters. He kind of snickered through some of the interview. I just never seen [*sic*] that kind of behavior from anyone that I've interviewed in my past; and even later, on [the] jail tape, in jail, months later he referred to them as mother fuckers on the jail tape.
>
> I don't believe that [Appellant] is sorry for what he did; and I just hope that you consider today how big of a -- I want to say that he's very dangerous to society, and I hope that you consider that today, after he displayed this reckless behavior over and over and over, again, towards these older women….

*Id.* at 9-10.

Appellant asserts that this testimony was not permitted pursuant to 42

Pa.C.S. § 9738, which governs victim impact statements. That provision

provides, in its entirety, as follows:

> **(a) General rule.--**Notwithstanding any other statute, rule or provision of law to the contrary, in the trial of a defendant accused of an offense, including an offense subject to sentence under section 9711 (relating to sentencing procedure for murder of the first degree), a court shall not order the exclusion of any victim of the offense from the trial on the basis that the victim may, during the sentencing phase of the proceedings:
>
>> (1) make a victim impact statement or present any victim impact information in relation to the sentence to be imposed on the defendant; or

(2) testify as to the effect of the offense on the victim or the family of the victim.

**(b) Definition.--**As used in this section, the term "victim" shall mean a "victim" as defined in:

(1) section 103 of the act of November 24, 1998 (P.L. 882, No. 111),[1] known as the Crime Victims Act; or

(2) 18 Pa.C.S. § 3001 (relating to definitions).

[1] 18 P.S. § 11.103.

42 Pa.C.S. § 9738.

"Victim" is defined by 18 P.S. § 11.103 as follows:

(1) A direct victim.

(2) A parent or legal guardian of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.

(3) A minor child who is a material witness to any of the following crimes and offenses under 18 Pa.C.S. (relating to crimes and offenses) committed or attempted against a member of the child's family:

Chapter 25 (relating to criminal homicide).

Section 2702 (relating to aggravated assault).

Section 3121 (relating to rape).

(4) A family member of a homicide victim, including stepbrothers or stepsisters, stepchildren, stepparents or a fiance, one of whom is to be identified to receive communication as provided for in this act, except where the family member is the alleged offender.

18 P.S. § 11.103.

Based on these provisions, Appellant contends that:

As written, the law offers very little room for anyone who is not either a direct victim or a family member of the victim to testify. The law allows non-victims to offer statements only

- 15 -

when they are closely related to a deceased victim, or else the minor witness to a crime. It does not permit statements by police or investigators.

Appellant's Brief at 16.

The Commonwealth argues that 42 Pa.C.S. § 9738 does not serve to prohibit any testimony, by anyone, at any time. Even if it did, however, the Commonwealth contends that Detective Mecurio's testimony was not presented to the trial court as a victim impact statement, nor did the Commonwealth claim the detective was a victim. The Commonwealth argues that her testimony was nevertheless relevant to the trial court's contemplation of "legitimate" considerations "under the Sentencing Code: [A]ppellant's demonstrated character and amenability to rehabilitation, and the impact of [A]ppellant's behavior on the community at large." Commonwealth's Brief at 26.

We agree with the Commonwealth. Nothing in our reading of Section 9738 purports to *restrict* who may testify at sentencing, or at any other stage of criminal proceedings. To the contrary, the statute dictates that a court *shall not* exclude a victim from testifying at trial, on the basis that they might subsequently make a victim impact statement at sentencing. 42 Pa.C.S. § 9738(a)(1). Appellant's interpretation of the statute as placing restrictions on who may testify at sentencing is irrational. Moreover, Appellant has not cited any other legal authority which would serve to prohibit Detective Mecurio's testimony. Accordingly, we conclude that Appellant's second claim lacks merit.

- 16 -

Judgment of sentence *affirmed*.

Judge Bowes joins this memorandum.

Judge Strassburger files a concurring memorandum in which Judge Bowes joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/4/2017